IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **Criminal No. ELH 19-0159** |
| **XAVIER LEE** | * | |

\* \* \*

**MOTION TO RECONSIDER ORDER OF DETENTION**

Comes now Xavier Lee, by and through undersigned counsel, and requests a hearing to reconsider a finding that no conditions of release can be set to ensure Mr. Lee will come to court and the public will be protected. Mr. Lee sets forth the following in support of this request:

**A.  Procedural History of Case**

Mr. Lee was arrested on March 15, 2019 for the single count of Use of Interstate Facilities to Promote a Business Enterprise Involving Prostitution Offenses in violation of 18 U.S.C. Sec. 1952(a)(3). On the same date, he was released on pretrial supervision with conditions, including location monitoring while living with third party custodian, sister Rita Bowers. He was initially represented by the Office of the Federal Public Defender. Undersigned counsel was appointed on February 13, 2020.

Mr. Lee remained in the community with several modifications to his release for changes to curfew to allow for him to obtain a real estate license and employment. On December 11, 2019, Mr. Lee was charged in a five count Superseding Indictment alleging Production of Child Pornography and Child Sex Trafficking and related counts. Following a hearing in which the government alleged Mr. Lee attempted to or had

contact with a potential victims and a potential witness, Mr. Lee was detained on January 3, 2020. He has been detained at DC Department of Corrections, currently at Correctional Treatment Facility.

There is no trial date set in the case. Mr. Lee is seriously considering a plea offer extended by the government. *Exhibit 1, filed under seal.* Mr. Lee is a lifelong resident of Elkton, MD and is not a flight risk, especially during this pandemic.

The Bail Reform Act requires that the Court consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142(g).

For the reasons stated below, Mr. Lee avers several of the above factors weigh heavily in determining there are conditions of release that will ensure his attendance at trial and ensure the safety of the public.

### B.  Status of the unsafe conditions at DC Department of Correction

As you know, on March 11, 2020, the World Health Organization (WHO) declared the outbreak of novel coronavirus (COVID-19) to be a pandemic.  On March 13, 2020, the President of the United States declared a national state of emergency in response to the COVID-19 outbreak.[1]  The Center For Disease Control (CDC) has published today that 163,539 people have the virus in the country and there have been 2860 deaths.  At a local level, the District of Columbia has 495 per the CDC; the State of Maryland has 1660 cases; and the Commonwealth of Virginia has 1020 cases.

Mr. Lee has not been diagnosed with coronavirus or with an underlying condition that would make him especially vulnerable to the dire symptoms of COVID-19.  His continued detention at CTF, however, makes him especially vulnerable for contracting and possibly spreading the virus.

As of today, there are 6 inmates at DC Department of Corrections (DC DOC) that have tested positive for coronavirus.  There are several inmates in quarantine after having been exposed to a United States Marshall and inmates who tested positive for the virus.  A vote of "no confidence" by Union members regarding how the jail is handling this crisis was also reported. *See, www.washingtontimes.com/2020/mar/20/union-votes-no-confidence-dc-jailleaders-handling.*  Mr. Lee cannot keep a safe distance from others at the jail given the limitations of the environment.  The virus has affected the facility housing Mr. Lee and he is at risk of exposure at this time.

The government has opposed motions for release from custody in similar cases by arguing that the threat of COVID-19 at local pretrial detention facilities is only

---

[1] https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

hypothetical. That argument is no longer tenable. As could easily have been predicted, individuals are now testing positive in pretrial detention facilities all over this region.

Mr. Lee should be released because of the COVID-19 public health emergency, a factor that has been considered by other judges of this District. *See United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3–4 (D. Md. Mar. 17, 2020), and most recently *United States v. Michael Davis, Jr.* No. ELH-20-09 (D. Md. Mar. 30, 2020 at ECF 21. The COVID-19 public health emergency is directly relevant to weighing "the nature and seriousness of the danger to any person or the community that would be posed by the person's release" and the defendant's "physical and mental health." 18 U.S.C. § 3142(g)(3)(A) & (4).

The CDC has provided specific recommendations to help stop the spread of the virus in the general public. Numerous public health experts have specified the more dire necessity to take more precautions in detention facilities. In a March 25, 2020 letter to Governor Hogan signed by over 200 public health experts, doctors, and nurses who teach at Johns Hopkins Bloomberg School of Public Health, School of Nursing, and School of Medicine expressing their "urgent concern about the spread of COVID-19 in Maryland's prisons, jails, and juvenile detention centers." *See* Mar. 25, 2020 Ltr. from Johns Hopkins Faculty to Gov. Hogan ("Hopkins Faculty Ltr."), available at https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-faculty-letter-on-COVID-19-jails-and-prisons.pdf. These Hopkins faculty members believe "an urgent priority in this time of national public health emergency [is] to reduce the number of persons in detention as quickly as possible." *Id.* They advise that reducing the number of

4

detained persons in Maryland will make the community safer.  Mr. Lee requests the expert advice be considered in weighing whether a non-violent offender with little to no criminal record, who has a safe place to shelter in place with family, and who can quarantine if necessary, can be released with multiple conditions to ensure appearance and public safety.  *See also,* Joseph A. Bick (2007).  Infection Control in Jails and Prisons.  *Clinical Infectious Diseases.* 45(8): 1047-1055.  *at* http://usdoi.org/10.1086/521910.   The conditions suggested in this motion are sufficient, especially with this looming medical threat.

       The CDC, the Trump Administration, the Hopkins faculty, and other public health officials are instructing us that social distancing is the only way to slow down the spread of COVID-19, to flatten the curve, and to avoid a strain on our scarce healthcare resources. Social distancing in a pretrial facility is nearly impossible for anyone who enters its doors, especially detainees.

       Incarcerated individuals are more vulnerable to contract the disease because they live in cells with multiple people in close quarters, are regularly required or allowed to inhabit communal spaces for eating, bathing, or awaiting transport to or from court, and are nearly always in close contact with other people.  The active vulnerability of the prison population in turn compounds the risk to the public health because lawyers, correctional officers, and other staff are coming into and out of the prison and therefore can carry to the outside world any diseases that festered inside or carry the virus into the facility.  Understanding these concerns, governmental authorities increasingly are attempting to release prisoners affected by COVID-19.  *See, e.g.*, Julia Marsh, *NYC to*

*begin releasing inmates amid coronavirus outbreak*, New York Post (Mar. 18, 2020), https://tinyurl.com/trba737.

Courts around the country are addressing issues relating to incarceration and several have deemed the safety and welfare of those in the prison community outweighs detention, especially if the public is not threatened by a violent crime. A few of these cases are:

- On March 26, 2020, the D.C. District Court ordered the release of a defendant with a criminal history charged in a gun and drug case. *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020).
    - The court cited "palpable" risk of spread in the jail and "real" risk of "overburdening the jail's healthcare resources."
    - "[T]he Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement."

- Also on March 26, 2020, Judge Randolph Moss in the D.C. District Court ordered the release of a defendant who pled guilty to child pornography and is awaiting sentencing. *United States v. Harris*, No. 19-356 (D.D.C. March 26, 2020)
    - "The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on these strict conditions."

- On March 30, 2020, Judge Deborah Boardman in this District ordered the release of a defendant who was charged with Conspiracy to Distribute CDS and related charges. The government proffered the defendant sold several guns to a CI during the conspiracy. *United States v. Davis*, No. ELH 20-09 (D. Maryland March 30, 2020)
    - With the conditions of supervised release "in mind, the Court finds that Davis' continued incarceration poses a greater risk to community safety than his release".

**C. Mr. Lee's Sixth Amendment right to counsel is being severely curtailed**.

Inexplicably, CTF has still been allowing in contact attorney visits. Once it was clear the true danger of spreading the virus, the Federal Defender in both Maryland and Washington, DC requested counsel not go to any of the jails to minimize risk to all

6

clients.  Chesapeake Detention Facility has not been allowing contact visits between attorneys and inmates for at least two weeks.  Attorneys are thus put in the choice of exposing themselves, others, and family to the virus already causing problems at CTF by going to visit a client and/or exposing the jail population in the event the attorney is infected.  Undersigned counsel has not gone to CTF and intends to heed the health warnings.  This causes an interruption in the attorney client relationship (which is in its infancy at this point due to the recent appointment) and an inability to effectively guide Mr. Lee regarding his options, including whether to enter a guilty plea.  The plea agreement deadline has been extended to April 27, 2020, but it is unlikely the conditions that interfere with client contact will get better before that time.  Mr. Lee has been able to make a telephone call for approximately 10 minutes, an insufficient amount of time to have effective and meaningful conversation.  In addition, Mr. Lee has clearly not received my letters, thereby suggesting there is a delay in the mail distribution.  CTF does not have a video link.  While it was extremely unclear if an attorney could schedule a legal call in the beginning of this pandemic, the system CTF claimed they would follow to set up legal calls is not working at all.

Should Mr. Lee be released, the case is more likely to be resolved because counsel will be able to communicate with him without these logistical problems.

**D.   It is unnecessary, and indeed unlawful, to require that a pretrial defendant prove they have been exposed to or infected by COVID-19, because the Due Process Clause of the Fifth Amendment protects against unreasonable risk of future harm.**

Public health officials and infectious disease experts are unanimous: jail is a likely place for the rapid spread of COVID-19. Requiring proof of exposure or infection is not only epidemiologically unsound given the exponential growth of the outbreak, and

dangerous given the public health risks associated with a jail outbreak, it is also unlawful. The Fifth Amendment's Due Process Clause requires that pretrial detainees be protected against unreasonable risk of future harm. More than 25 years ago, in *Helling v. McKinney*, 113 S.Ct. 475 (1993), the Supreme Court held that the Eighth Amendment protects prisoners from future harm. This is equally true in the context of pretrial detainees, whose rights under the Due Process Clause are at least equal to those of convicted persons under the Eighth Amendment. *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988). Noting that "nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms," the Court was clear that "a remedy for unsafe conditions need not await a tragic event." *Id*. at 2480-81.

A pretrial defendant's legitimate fear of heightened risk of exposure to COVID-19 is not speculative or premature. Once exposed or infected, the government will likely argue that continued detention is necessary to protect against community spread. This catch-22 is constitutionally unsound and contradicts the advice of medical experts. Requiring someone to come closer to catching a disease that may be debilitating or deadly is illogical and dangerous.

### E.   Mr. Lee is detained on a crime that did not involve violence and he is not a threat to the community if released.

Mr. Lee is currently 41 years old and the father of three sons over the age of 18. He is incarcerated at DC Correctional Treatment Facility (CTF). The most recent inmate who contracted the virus is believed to be approximately 20 years old. Prior to his incarceration, Mr. Lee lived in Elkton, Maryland close by to his sons, his mother, and three sisters. His history of employment involves several sales positions until his early

8

Case 1:19-cr-00159-ELH   Document 82   Filed 04/01/20   Page 9 of 10

thirties. When threatened to be incarcerated for failure to pay child support after he lost his sales job, Mr. Lee turned to other methods of making ends meet that led him to these charges.

Should Mr. Lee be released, he can live with his sister, Rita Bowers, at 308 E. Village Rd., Elkton, MD 21921. Ms. Bowers has previously been screened and approved as a third party custodian for Mr. Lee by U.S. Pretrial Services Office. Mr. Lee lived with Ms. Bowers when he was initially released under pretrial supervision. She will agree again to be a third party custodian. Mr. Lee can be placed on whatever method of monitoring 24/7 that is approved and supervised by Pretrial Services. He can abide by any condition of release, including no access to the Internet or a telephone, and no contact with all names on a list already supplied by the government of potential victims or witnesses.

Mr. Lee does not pose a risk to the community that is outweighed by the serious risk to his health and the health of others at the DC Department of Corrections and the community at large. His prior criminal convictions involve probation before judgment for driving on a suspended license in 2010 and probation before judgment for nonsupport of a minor child, also in 2010. The current charges allege Mr. Lee ran a prostitution company accessed via the Internet. There are no allegations of violence or weapons involved in the operation of that company. According to discovery, Mr. Lee took several steps to ensure the safety of all involved (operating during the day only to limit drugs and alcohol; remaining outside the hotel room; monitoring the room to ensure the girls were safe, etc.). While certainly not minimizing Mr. Lee's conduct, discovery indicates the child pornography allegations relate to a limited number of videotaped acts involving his

9

16-year-old girlfriend. As noted above, Mr. Lee is seriously considering a plea offer that will include acceptance of responsibility for these actions.

Mr. Lee can be placed on 24/7 monitoring, to live with a third party custodian, with no Internet access, and an order to not possess a telephone so that he cannot contact potential victims and witnesses.2  On March 29, 2020, Governor Larry Hogan issued an executive order to shelter in place. This order will serve to limit any movement around the State and thus add a safety net that Mr. Lee will not be a flight risk.

WHEREFORE, it is respectfully requested that a hearing be set in and conditions of release be set in the above matter.

Respectfully submitted,

*Teresa Whalen*
_____
Teresa Whalen, Esquire
Federal Bar No.: 25245
801 Wayne Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 588-1980; (301) 728-2905

---

2 Pretrial Services may only be able to monitor Mr. Lee using a system that requires a telephone, but this phone must be a landline phone. Other systems require a smart phone. Ms. Bowers is willing to obtain a landline phone. In the event the system used requires a smart phone, Ms. Bowers agrees to monitor the use of that phone and Mr. Lee agrees to allow for Pretrial to search its contents to ensure compliance with no contact with victims and witnesses.