IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   *Plaintiff*,<br><br>v.<br><br>XAVIER LEE,<br>   *Defendant* | Civil Action No. ELH-19-159 |

**MEMORANDUM**

This Memorandum resolves an "Appeal Of Denial Of Motion To Reconsider Order Of Detention And Motion To Set Conditions of Release" (the "Appeal") filed by defendant Xavier Lee. He is a detainee at the Correctional Treatment Facility ("CTF") in Washington D.C., which is maintained by the D.C. Department of Corrections ("DOC").

In particular, Lee challenges the recent ruling of U.S. Magistrate Judge A. David Copperthite on April 3, 2020 (ECF 86), denying reconsideration of a detention order previously issued by Judge Copperthite on January 3, 2020. ECF 66. The government opposes the Appeal (ECF 95) and Lee has replied. ECF 96.[1] In addition, at the request of the Court (ECF 93), I have been provided with the report previously prepared by U.S. Probation and Pretrial Services concerning the defendant, dated March 15, 2019.

---

[1] In connection with the Appeal, the government also filed a "Motion to Strike References to Plea Negotiations," seeking to strike "all explicit references made by Lee before this court concerning plea negotiations . . . ." ECF 91 (the "Motion to Strike"). Defendant opposes the Motion to Strike. ECF 96. He contends that the posture of the case is relevant to the Court's consideration of the Appeal.

The Court has reviewed the allegedly offensive statements and finds nothing that could somehow be construed as involving the Court in the parties' plea negotiations. In any event, Lee's representations concerning plea negotiations did not play a role in my assessment of his Appeal. Accordingly, I shall deny the government's Motion to Strike (ECF 91).

No hearing is necessary to resolve the Appeal. *See* Local Rule 105.6.[2] For the reasons that follow, I shall deny the Appeal.

## I.   Procedural Background

Lee is 41 years of age. ECF 90 at 10. He was arrested on March 15, 2019, pursuant to a federal criminal complaint charging him with the use of interstate facilities to promote prostitution, in violation of 18 U.S.C. § 1952(a)(3). ECF 1; ECF 2. At Lee's initial appearance that day, Judge Copperthite ordered Lee released on pretrial supervision. ECF 9. In the Order Setting Conditions of Release, Judge Copperthite specified that Lee's travel was restricted to Maryland; he could not violate state, federal, or local law; and he was to have "no contact with any potential victims or witnesses." *Id.* at 2. Lee signed the Order, promising to obey all conditions of release and acknowledging that his failure to comply could result in his pretrial detention. *Id.* at 3. While on pretrial release, Lee resided with his sister in Elkton, Maryland.

A federal grand jury indicted Lee on March 28, 2019, charging him with one count of using interstate facilities to promote prostitution, in violation of 18 U.S.C. § 1952(a)(3). ECF 14. A superseding indictment was returned on December 11, 2019, charging Lee with the use of interstate facilities to promote prostitution, in violation 18 U.S.C. § 1952(a)(3) (Count One); child sex trafficking, in violation of 18 U.S.C. §§ 2, 1591(a) (Count Two); production of child pornography, in violation of 18 U.S.C. §§ 2, 2251(a) (Counts Three and Four); and interstate transportation for prostitution, in violation of 18 U.S.C. §§ 2, 2421 (Count Five). ECF 53. The

---

[2] Although the Bail Reform Act does not address whether a defendant is entitled to an in-court hearing on an appeal of detention, Judge Grimm assessed the issue recently and found "ample authority for the conclusion that the Court may decide the motion on the filings . . . as opposed to a hearing." *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020).

superseding indictment details Lee's alleged operation of an illicit prostitution enterprise from 2013 to 2019; identifies five victims, two of whom were minors at the relevant time; and lists some of the sex acts that Lee performed and recorded with one of the minor victims. *See id.* If convicted, defendant faces a maximum sentence of life imprisonment.

On December 16, 2019, the government moved to revoke Lee's pretrial release, asserting three grounds. ECF 56; ECF 58 (sealed). First, the government claimed that Lee had violated the conditions of his pretrial release by contacting two potential witnesses, both of whom resided in Elkton. *Id.* at 1-2. Second, the government proffered that when Lee contacted the witnesses he was "soliciting them for sexual acts in exchange for money, just as he had done in the past." *Id.* at 2. According to the government, text messages recovered from Lee's phone corroborated that Lee had previously solicited sex from one of the witnesses. *Id.* at 3-4. Therefore, the government argued that Lee had violated his conditions of release by soliciting prostitution, a crime under Maryland law. *See id*. at 6 (citing Md. Code, § 11-306 of the Criminal Law Article). Third, the government contended that the charges in the superseding indictment gave rise to a presumption of detention, pursuant to 18 U.S.C. § 3142(e)(2). *See id.* at 6-7.

Judge Copperthite presided at a detention hearing on January 3, 2020. ECF 65. He determined that the government was entitled to a presumption of detention under 18 U.S.C. § 3142(e), in light of the charges in the superseding indictment, and that Lee had not rebutted this presumption. ECF 66. Further, applying the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), Judge Copperthite concluded that there was clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the public. *Id.* at 1. Specifically, he found that Lee allegedly contacted victims and potential witnesses; he allegedly

solicited sex acts while on pretrial supervision; and the charged offenses, which involved minor victims, were serious. *Id.*

Accordingly, Judge Copperthite entered an Order of Detention, pursuant to 18 U.S.C. § 3142. ECF 66. Lee was remanded to custody and is now detained at CTF.

On April 1, 2020, Lee filed a "Motion For Reconsideration of Detention," pursuant to 18 U.S.C. § 3142. ECF 82. Defendant sought his release on home confinement in light of the coronavirus pandemic, maintaining that he "does not pose a risk to the community that is outweighed by the serious risk to his health and the health of others at the DC Department of Corrections and the community at large." *Id.* at 9. The government opposed the motion. ECF 85.

Judge Copperthite denied Lee's motion in a Memorandum and Order docketed on April 3, 2020. ECF 86. Again, Judge Copperthite found that the factors set forth in 18 U.S.C. § 3142(g) cut decisively against Lee's release. He noted that Lee did not dispute the seriousness of the charges nor the strength of the government's evidence. *See id.* at 1-2. And, Judge Copperthite was "not persuaded by the argument that sex trafficking of minors and production of child pornography is not a violent crime." *Id.* at 2. Further, he observed that Lee's "illicit conduct dates back to 2013" and that he "had contact with two of the victim/witnesses in violation of his release, when he was previously on release." *Id.*

Despite finding Lee a danger to the community, Judge Copperthite nonetheless assessed whether Lee's release was warranted in light of the COVID-19 outbreak. *Id*. at 2-3. He acknowledged the "tragic effects" of the coronavirus pandemic generally, and for individuals detained in correctional facilities specifically. *Id.* at 3. But, he determined that the measures implemented at CTF "are reasonable under the circumstances and the allegations raised by Defendant do not rise to the level of a constitutional violation of Due Process under the 5th

Amendment." *Id.* Moreover, Judge Copperthite determined that "acceptable location monitoring is no longer available due to the risks to pretrial services personnel" and, in any event, Lee "is not a candidate for home detention," given the nature and gravity of the charges and his prior conduct while on supervised release. *Id.* at 4.

This Appeal followed on April 17, 2020. ECF 90. In defense counsel's submission, she advises that Lee has high blood pressure, is obese, and suffers from depression. *Id.* at 5.[3] Also, Lee is now in a quarantine unit because of his exposure to inmates who apparently have COVID-19. Further, Lee asserts that CTF is "an extremely dangerous place to be during this pandemic." ECF 96 at 8. In defendant's view, he "should be released because of the COVID-19 public health emergency . . . ." *Id.* at 10

## II.     Standard of Review

Ordinarily, a defendant should not be detained pending trial. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The Bail Reform Act (the "Act"), 18 U.S.C. § 3141 *et seq.*, governs the release or detention of a defendant pending trial.

As is relevant here, the government may move for a defendant's pretrial detention if the case involves a minor victim or the sex trafficking of a minor. *Id.* § 3142(f)(1)(E). If the court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).

---

[3] No medical records were submitted. Nor does the Court believe it is necessary to obtain the records for the conditions alleged here.

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). The test is disjunctive; a finding on either ground compels the defendant's detention. *See Salerno*, 481 U.S. at 754-55. But, the burden of proof differs: the government must establish that a defendant is a flight risk by a preponderance of the evidence, whereas the defendant's danger to the community must be proven by clear and convincing evidence. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

In deciding whether detention is necessary, the court "is not given unbridled discretion." *Salerno*, 481 U.S. 742. Rather, the Act directs the court to "take into account the available information concerning" four factors. 18 U.S.C. § 3142(g). Those factors include, *id.*:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

Of relevance here, when the defendant is charged with certain crimes there is a presumption in favor of detention. Specifically, the Act creates a rebuttable presumption "that no condition or

combination of conditions will reasonably assure . . . the safety of the community if . . . there is probable cause to believe that the person committed" one of an enumerated list of crimes, including sex crimes involving a minor victim. 18 U.S.C. § 3142(e)(3)(E). For purposes of making that determination, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *Stone*, 608 F.3d at 945; *see United States v. Sheikh*, 994 F. Supp. 2d 736, 739 (E.D.N.C. 2014).

Once triggered, "the burden of production shifts to the defendant to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case." *United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007); *see also United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018); *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). To do so, the defendant must proffer "at least some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'" giving rise to the presumption. *Stone*, 608 F.3d at 945-46 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)). If the defendant offers evidence to counter the presumption, it does not fall out of the picture entirely but rather remains a factor in the court's totality-of-the-circumstances analysis. *See Khusanov*, 731 F. App'x at 21; *Stone*, 608 F.3d at 945; *Taylor*, 289 F. Supp. 3d at 64.

Section 3142(i) of the Act provides a distinct statutory basis for pretrial release. Under § 3142(i), the court may "permit the temporary release of [a] person" to "the custody of a United States marshal or another appropriate person," if the court determines that pretrial release is "necessary for preparation of the person's defense or for another compelling reason." As other courts have observed, claims predicated on § 3142(i) have historically involved claims that release was necessary for the preparation of the defendant's defense or where the defendant suffered from a serious medical condition. *See, e.g.*, *United States v. Clark*, ___ F. Supp. 3d ___, 2020 WL

1446895, at *2 (D. Kan. Mar. 25, 2020); *United States v. Stephens*, ___ F. Supp. 3d ___, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See Stephens*, 2020 WL 1295155, at *3. Notably, courts have invoked § 3142(i) parsimoniously and only for truly extraordinary circumstances. *Compare United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993) (granting temporary release where the defendant had sustained a gunshot wound to the head and would "shortly die" from AIDS), *with United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (denying temporary release where the defendant disclosed that he had a hernia but did not explain why correctional authorities could not capably provide treatment). In the context of the COVID-19 pandemic, the Fourth Circuit has suggested that § 3142(i) requires evaluating whether "the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, . . . balanced against the other Bail Reform factors, rises to the level of a 'compelling reason'" justifying release. *United States v. Creek*, CCB-19-36, App. No. 20-4251, at *1 (4th Cir. Apr. 15, 2020); *see id.* at ECF 402.

Of import here, the Act provides that a defendant "ordered detained by a magistrate judge, . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and "the motion shall be determined promptly." *Id.* § 3145(b). The district court reviews the magistrate judge's ruling *de novo* "and must make an independent determination of the proper pretrial detention or conditions of release." *Stewart*, 19 F. App'x at 48. In particular, the court must determine whether there are conditions of release that will reasonably assure the safety of the community. In undertaking this examination, the court "'is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may

also hear additional evidence and rely on its own reasons.'" *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (citation omitted).

### III. Discussion

Lee moves for reconsideration of his detention under 18 U.S.C. §§ 3145(b) and 3142(i). ECF 90 at 1. Although Lee does not pinpoint any error in Judge Copperthite's ruling, and does not seriously dispute the presumption of detention, he "avers several of the [§ 3145(g)] factors weigh heavily in determining there are conditions of release that will ensure the safety of the public." *Id.* at 3. Further, Lee urges the Court to invoke § 3142(i), arguing that CTF is "ill-equipped" to handle the COVID-19 virus. *Id.* at 4. In addition, he maintains that his "particular vulnerabilities" constitute "a compelling reason to release him on strict conditions." *Id.* Lee also argues that his detention impinges on his Sixth Amendment right to counsel. *Id.* at 9-10.

Having considered the relevant factors, I find that no condition or combination of conditions of release would reasonably assure the safety of the community pending trial. Further, I conclude that the current COVID-19 pandemic does not warrant Lee's release.

First, I agree with Judge Copperthite that Lee poses a danger to the community if released. Lee is charged with use of interstate facilities to promote prostitution, child sex trafficking, production of child pornography, and interstate transportation for prostitution. ECF 53. These are indisputably serious offenses. *See New York v. Ferber*, 458 U.S. 747, 749 (1982) (describing the production of child pornography as child "abuse," "molestation," and "exploitation"). Indeed, Congress deemed these acts so serious that it established a statutory presumption in favor of pretrial detention. 18 U.S.C. § 3142(e). Significantly, Lee has put forth no evidence to rebut the presumption that his release will not endanger the community. Therefore, he must be detained pending trial, pursuant to 18 U.S.C. § 3142(e).

But, even assuming, *arguendo*, that Lee has rebutted the presumption in favor of his detention, the analysis under § 3142(g) would lead to the same result. To be sure, Lee, who is 41, has no history of violent crime. According to the Pretrial Services Report prepared by U.S. Probation and Pretrial Services, Lee's prior criminal convictions involve probation before judgment for driving on a suspended license in 2010 and probation before judgment for nonsupport of a minor child, also in 2010. And, Lee has strong ties to the community: he has lived in Maryland for the past 35 years and his partner, sister, and adult children all reside in Maryland.

However, Lee's alleged conduct is extremely disturbing and the weight of the evidence against Lee appears overwhelming. According to the government, for approximately five years prior to his arrest, Lee prostituted dozens of women in Maryland, including minors, through a website that he maintained, and which listed his cell phone number. *See* ECF 95 at 7. Lee then facilitated prostitution appointments by booking rooms at a hotel in Elkton, transporting victims to the hotel, and collecting money from customers. *See id.* at 7-9. In addition, the government proffers that Lee himself sexually victimized minors, as evidenced by eight videos it has recovered depicting a minor victim having sexual intercourse with Lee and another man. *See id.* at 6. Notably, Lee concedes that "[t]he evidence appears strongly in favor of the government's case . . . ." ECF 90 at 11.

Significantly, following Lee's arrest in March 2019, Judge Copperthite ordered Lee released to the custody of his sister. Yet, he failed to abide by pretrial conditions while on pretrial release. As a result, on December 16, 2019, the government moved to revoke Lee's pretrial release, proffering that he had contacted potential witnesses for sex in the preceding months. ECF 56. These violations were not mere technicalities; they were egregious. And, Judge Copperthite credited the allegations in his Order of Detention. ECF 66.

Lee's conduct while under pretrial supervision reflects that no proposed combination of conditions will adequately ensure the public's safety if Lee were now released. His inability to comply with his prior conditions of release weighs heavily against giving him a second bite at the apple. *See, e.g.*, *United States v. McKenzie*, 18 Cr. 834 (PAE), 2020 WL 1675893, at *1 (S.D.N.Y. April 6, 2020) (observing that defendant who had been granted pre-sentence release based on the risk of becoming ill from COVID-19 immediately violated his release conditions by hosting a welcome-home party).

It is also problematic that Lee proposes to be released to his sister in Elkton. ECF 90 at 3-4. She is not a suitable custodian. Lee resided with his sister for the five years during which he ran a prostitution enterprise. She lives in Elkton, the same community where Lee committed his crimes. And, Lee's sister was unable to prevent him from violating his conditions of release. In addition, her twin teenage daughters live in the house. Given the nature of the crime, their presence poses a serious concern.

The problem of adequately monitoring Lee is compounded by the fact that the usual tools of supervision are not readily available, as they have been adversely affected by the COVID-19 outbreak. Probation and Pretrial Services has recently advised that it is no longer providing new electronic monitoring services. Other methods of supervision would be insufficient, because they do not immediately alert if a defendant is noncompliant. *See* ECF 95 at 25-26.

Lee's reliance on § 3142(i) fares no better. To be sure, like other judges in this district, I recognize the unique threat posed by the COVID-19 pandemic, the worst the world has experienced since 1918. *See United States v. Khalil Shaheed*, CCB-19-526, ECF 32 (D. Md. Apr. 20, 2020) (Boardman, M.J.); *United States v. Gray*, GJH-19-407, 2020 WL 1554392, at *1 (D. Md. Apr. 1, 2020); *United States v. Jefferson*, CCB-19-487, 2020 WL 1332011, at *1 (D. Md.

Mar. 23, 2020); *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020). The virus is highly contagious; it spreads "easily and sustainably" from person-to-person. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTR. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Asymptomatic carriers can spread COVID-19, and scientists estimate that the average infected person transmits the disease to between two and four others. *See* Jenny Gross & Mariel Padilla, *From Flattening the Curve to Pandemic: A Coronavirus Glossary*, N.Y. TIMES (Mar. 18, 2020), https://nyti.ms/3aW4yAI. The disease is also highly fatal, having claimed thousands of lives in the United States and around the world. *See Coronavirus Disease 2019 (COVID-19), Cases in the U.S.*, CTR. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/2y6wfIq (last visited Apr. 23, 2020).

With respect to Lee specifically, he claims that he "suffers from underlying conditions that would make him especially vulnerable to the dire symptoms of COVID-19," namely "obesity, high blood pressure, and depression." ECF 90 at 5. But, Lee had reported to Pretrial Services that "he is in excellent physical health with no medical problems reported." And, in any event, judges in this district have declined to release detainees suffering from far more serious chronic conditions. *See United States v. Ray*, TDC-19-215, 2020 WL 1849764, at *1 (D. Md. Apr. 13, 2020) (Day, M.J.) (collecting cases); *see, e.g.*, *United States v. Bilbrough*, TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (denying release to inmate with diabetes); *Gray*, GJH-19-407, 2020 WL 1554392 (denying release defendant who had heart surgery as a child requiring regular EKGs and who experienced heart flutters, a compromised immune system, and shortness of breath); *Martin,* PWG-19-140-13, 2020 WL 1274857 (denying release to inmate who suffered from diabetes, high blood pressure, and asthma).

The Court does not minimize Lee's health concerns.  But, no evidence has been submitted to support that these health issues are of such gravity as to warrant immediate release.

As to the current circumstances at CTF, it is indisputable that COVID-19 has penetrated the facility and is spreading among the detainees and staff.  As of April 23, 2020, the D.C. government reported that there were 110 detainees who have tested positive (47 in isolation and 62 recovered); 971 detainees who are currently under quarantine; and one pretrial detainee had died from the virus.  *See Public Safety Agency COVID-19 Case Data*, GOV'T OF D.C., https://bit.ly/2yGcGat (last visited Apr. 23, 2020).  DOC staff have also been exposed: as of April 23, 2020, some thirty employees have tested positive, 114 employees are in quarantine, and one employee has died.  *Id.*

Further, it is beyond dispute that correctional facilities are in general ill-suited to prevent outbreaks and mitigate their spread.  *United States v. Goss*, 15-cr-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020); *United States v. Davis*, ELH-20-09, 2020 WL 1529158, at *5 (D. Md. Mar. 30, 2020).  And, of particular import here, on April 19, 2020, Judge Colleen Kollar-Kotelly of the United States District Court for the District of Columbia found that DOC detainees had mustered substantial evidence that DOC was aware of the threats posed by COVID-19 but had "disregarded those risks by failing to take comprehensive, timely, and proper steps to stem the spread of the virus," in violation of the detainees' due process rights.  *Banks v. Booth*, No. 20-849 (CKK), 2020 WL 1914896, at *11 (D.D.C. Apr. 19, 2020); *see id.* at *13 (granting TRO to CTF inmates but denying their release).

That said, DOC has implemented substantial measures at CTF to protect detainees from COVID-19 and to treat those who are infected.  *See D.C. Dep't of Corrs., DC Department of Corrections' COVID-19 Response FAQs*, GOV'T OF D.C., https://bit.ly/2y6xEyG (last visited Apr.

23, 2020) ("DOC COVID-19 Policy"); *see also United States v. Sturmer*, GJH-18-468, 2020 WL 1676313, at *3 (D. Md. Apr. 6, 2020) (accepting government's proffers that DOC is implementing "comprehensive" measures to monitor and treat detainees); ECF 95 at 18-23 (detailing COVID-19 measures undertaken at CTF). For instance, DOC has suspended nearly all in-person visits, programming, and volunteer activities, and has enhanced cleaning efforts, especially in common areas. Daily activities, such as recreation and showering, have been modified to facilitate social distancing. And, detainees who exhibit the symptoms of COVID-19 are quarantined and provided access to medical care. *See* DOC COVID-19 Policy.

Furthermore, Judge Kollar-Kotelly has ordered DOC to take further action at CTF to protect inmates. These measures include triaging sick call requests, implementing social distancing policies, and ensuring that DOC staff are equipped with protective equipment. *See Banks*, 2020 WL 1914896, at *13-15.

In Lee's Appeal, he references various developments, including the litigation before Judge Kollar-Kotelly, which he submits demonstrate that CTF is not providing inmates with adequate care. ECF 90 at 6. But, in this rapidly evolving situation, new information concerning the virus emerges at break-neck pace, and DOC has repeatedly revised its procedures. Now, DOC must do so again, in light of Judge Kollar-Kotelly's ruling. *See United States v. Green*, CCB-19-539, 2020 WL 1873967, *2 (D. Md. Apr. 15, 2020) (Coulson, M.J.).

As Judge Hazel of this Court has observed, "COVID-19 is not a virus that has specifically attacked the D.C. Jail"—it is a "global pandemic that all citizens of the world are struggling to combat." *Gray*, 2020 WL 1554392, at *2. Simply put, the coronavirus is "not tantamount to a 'get out of jail free card.'" *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.).

Ultimately, upon assessing the § 3142(g) factors in light of the pandemic, I find that Lee's medical conditions and the circumstances at CTF do not outweigh the serious nature of Lee's alleged conduct, the weight of the evidence, and Lee's prior violations of supervised release. Accordingly, the pandemic does not serve as a "compelling reason" to grant Lee temporary release under § 3142(i). *See Creek*, No. 20-4251, at *1.

Finally, Lee's Sixth Amendment concerns do not compel his release. It appears likely that the policies CTF has implemented for the safety of staff and detainees will, in the short term, make it more difficult for detained defendants to communicate with counsel. In-person visitation has been understandably curtailed. And, according to Lee's counsel, CTF is no longer arranging legal calls, although the government disputes that contention. ECF 90 at 10; *but see* ECF 95 at 26-27. However, Judge Kollar-Kotelly has ordered that DOC "shall take immediate steps to provide consistent and reliable access to legal calls." *Banks*, 2020 WL 1914896, at *14. Similarly, this Court recently ordered the warden at CTF to ensure that detainees with cases pending in this District "have reasonable access to their counsel and that counsel have reasonable access to their detained clients, via telephone at least." *See In re: COVID-19 Pandemic Procedures*, Case 1:20-mc-00146, Standing Order (D. Md. Apr. 23, 2020). Thus, going forward, Lee's detention should not impede his ability to communicate with defense counsel.

Even so, any strain imposed on the attorney-client relationship due to the coronavirus does not mandate release. The United States District Court in Maryland has canceled all non-emergency proceedings through June 5, 2020. *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case 1:00-mc-00308, Standing Order (D. Md. Apr. 10, 2020). Therefore, any difficulty experienced by Lee in communicating with his lawyer will not delay his case. *See Bilbrough*, 2020 WL 1694362, at *4. When proceedings resume, Lee and his attorney will be

afforded adequate opportunities to confer and to discuss resolution short of trial or, alternatively, to prepare for trial.

### IV.     Conclusion

For the reasons stated above, I shall affirm Judge Copperthite's Order (ECF 86).  Therefore, I shall deny Lee's Appeal (ECF 90).

An Order follows, consistent with this Memorandum.

Date:   April 24, 2020                                                  /s/
                                                                        Ellen Lipton Hollander
                                                                        United States District Judge